# STATE OF MICHIGAN

# COURT OF APPEALS

In re WALENTOWSKI, Minors.

UNPUBLISHED
December 20, 2018

No. 343599
Monroe Circuit Court
Family Division
LC No. 16-023797-NA

Before: CAVANAGH, P.J., and SERVITTO and CAMERON, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order terminating her parental rights to her two minor children, RW and AW, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (other conditions exist that led to jurisdiction have not been rectified), (g) (failure to provide proper care and custody),[1] and (j) (reasonable likelihood that children will be harmed if returned to parent). The parental rights of respondent-father were also terminated by the court, but respondent-father has not appealed the court's order of termination. On appeal, respondent-mother challenges the trial court's best-interest determination. We affirm.

Respondent-mother argues that the trial court erred when it concluded that termination was in the best interests of the children because (1) the paternal grandfather who accepted the relative placement required financial assistance to care for the children, and respondent-mother's parental rights were terminated in part because of her insufficient income; (2) the children did not have their own rooms at the paternal grandfather's home, and respondent-mother's parental rights were terminated in part because the children did not have their own rooms at respondent-mother's home; and (3) the trial court failed to consider each child's best interests individually. We disagree.

---

[1] MCL 712A.19b(3)(g) has been amended, effective June 12, 2018. See 2018 PA 58. The statute, as amended, states "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g) as amended by 2018 PA 58. The revised version of the statute is inapplicable because the order was entered on April 24, 2018.

The lower court must determine whether termination of parental rights is in a child's best interest using the preponderance of the evidence standard. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews the lower court's findings for clear error. MCR 3.977(K). "[T]he court's decision regarding [a] child's best interest" is also reviewed for clear error. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (quotation marks and citation omitted). A finding is clearly erroneous if, " 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *Id*. (citation omitted). Clear error review requires a lower court's decision to strike this Court "as more than just maybe or probably wrong." *Id*. Regard also must "be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

MCL 712A.19b(5) states that "[i]f the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests," the court must terminate the parent's rights. MCL 712A.19b(5). In making the best interest determination, "the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted).

First, respondent-mother argues that the court erred when it terminated her parental rights in part because of her insufficient income and because the paternal grandfather, who also had insufficient income, would receive an adoption subsidy upon termination of respondent-mother's parental rights. Respondent-mother's argument misconstrues the trial court's best-interest determination.

The trial court did not weigh the paternal grandfather's financial difficulties in his favor, nor did it terminate respondent-mother's parental rights because the paternal grandfather needed an adoption subsidy to provide for the children. Instead, the trial court acknowledged that the paternal grandfather was in "somewhat of a tenuous situation economically," and found that, despite his limited income, the paternal grandfather had managed to provide for all of the children's needs for the duration of the case. Indeed, it was *in spite of* the paternal grandfather's economic situation that the trial court weighed the advantages of the grandfather's home over the advantages of respondent-mother's home. For two years, the paternal grandfather had provided the "home and the forever home for the children and [had] provided for all of their needs." Furthermore, the trial court found that "[b]etween [the paternal grandfather's] income and the income of his elderly mother and . . . the home that he resides in that currently is owned by her, he's able to provide for the children, [and] maintain suitable housing with everything in working order." While the trial court agreed with petitioner's argument that the adoption subsidy would help "economically," the trial court also found that by terminating respondent-mother's parental rights and making the children available for adoption, the children would benefit "physically, psychologically, [and] emotionally."

Second, respondent-mother argues the trial court erred because it favored the paternal grandfather's living arrangement over her living arrangement even though neither could provide separate rooms for the children. Again, respondent-mother misconstrues the trial court's rationale.

The trial court did not find that respondent-mother's home, or more specifically the home of respondent-mother's parents, was unsuitable for the children because the children would not each have their own bedroom. Instead, the trial court found that the factor of "permanency, stability, and finality" weighed in favor of termination of parental rights because of respondent-mother's "unstable track record." Particularly, the trial court highlighted respondent-mother's recent return to her parents' home, and her "unstable track record . . . of housing . . . and bad choices in relationships[, which] shows that she's not able to provide stability for both herself and security for herself but most significantly for the kids." While the foster care worker did testify at trial that she believed each child should have their own bedroom, the trial court did not appear to rely on this belief because it did not refer to the particular characteristics of the home of respondent-mother's parents whatsoever in its best-interest determination. Regardless, the fact remained that the major concern was allowing RW and AW to share a room, which was not the arrangement with the paternal grandfather.

Finally, respondent-mother argues that the trial court failed to make separate best-interest determinations for AW and RW. Trial courts must consider "the best interests of each child individually." *In re Olive/Metts Minors*, 297 Mich App at 42. While keeping siblings together is typically in the best interests of each child, "if keeping the children together is contrary to the best interests of an individual child, the best interests of that child will control." *Id*. (quotation marks and citations omitted). However, this Court has clarified that "if the best interests of the individual children *significantly* differ, the trial court should address those differences when making its determination of the children's best interests." *In re White*, 303 Mich App 701, 715; 846 NW2d 61 (2014). The trial court does not err simply because "it fails to explicitly make individual and—in many cases—redundant factual findings concerning each child's best interests." *Id*. at 716.

On appeal, respondent-mother focuses on the differences in bond, arguing that she has a stronger bond with AW than RW. See *In re Olive/Metts Minors*, 297 Mich App at 41-42 (stating that one best interest factor is "the child's bond to the parent"). The foster care worker stated that AW "love[d] spending time with [respondent-mother]," whereas RW and respondent-mother's relationship was "[s]trained" because RW blamed respondent-mother for the family's separation, and believed that respondent-mother favored AW over him. However, the trial court weighed the existing parent-child bond of the children in respondent-mother's favor, concluding that "a bond exists" between respondent-mother and both her children. Instead, the remaining best-interest factors applied equally to both children, and those factors, such as lack of income, housing, failure to comply with the case service plan, advantages of the foster home, and the children's need of permanency and stability—vastly outweighed the favorable parental bond. To make separate factual findings on these points would have been redundant and was not necessary to the trial court's best-interest determination.

Additionally, respondent-mother argues that, because her parenting ability differed between AW and RW, the trial court should have analyzed that factor separately. See *In re Olive/Metts Minors*, 297 Mich App at 41-42 (stating that one best interest factor is "the parent's parenting ability"). The trial court found that respondent-mother's parenting ability was deficient as to both AW and RW because during visitations respondent-mother would focus her efforts on RW and his special needs, causing her to neglect AW. Respondent-mother argues that this finding suggests that if her parental rights to RW were terminated she would have the

requisite parenting ability to appropriately parent AW. However, this argument ignores the other aspects of her parenting ability as a best-interest factor.

The trial court's findings of facts established that respondent-mother was unable to "properly parent the children physically, psychologically, emotionally, [and] economically," all of which are encompassed in the parenting-ability factor. Respondent-mother's inconsistent employment history and insufficient income demonstrated that she lacked a "viable substantial track record of providing for the children's economic needs," and respondent-mother "[had] substantially failed to provide for their material needs during this case." Respondent-mother also placed AW at risk of physical, psychological, and emotional harm through her continued "poor judgment in maintaining co-dependent romantic relations, most recently with [a boyfriend], who victimized [respondent-mother] just this past year." Respondent-mother's poor track record involving romantic relationships is particularly dangerous for AW, who first came into care because respondent-mother's then live-in-boyfriend physically abused AW and caused her "multiple injuries including a broken wrist, a rib fracture, multiple bruises from head to toe[,] and [a] subdural bleed in her head." In sum, the trial court's findings of fact demonstrate that respondent-mother's parenting ability was deficient as to both children, and requiring the trial court to consider her parenting ability individually for each child would have been redundant and unnecessary. Therefore, the trial court did not clearly err when it determined that petitioner established by a preponderance of the evidence that termination of respondent-mother's parental rights was in the children's best interests.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
/s/ Thomas C. Cameron